UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HEALTHNOW NEW YORK INC. d/b/a BLUE
CROSS BLUE SHIELD OF WESTERN NEW
YORK,

         Plaintiff,
v.                   **DECISION AND ORDER**
                        14-CV-986S

CATHOLIC HEALTH SYSTEM, INC.,

         Defendant.

## I. INTRODUCTION

Presently before this Court is the motion of Defendant Catholic Health System, Inc., to dismiss the Amended Complaint against it. Plaintiff Healthnow New York, Inc., d/b/a/ Blue Cross and Blue Shield of Western New York ("BCBS"), a health insurance provider, commenced this action against the defendant healthcare system of hospitals, medical practices, and facilities in November 2014 alleging Catholic Health's violations of the Lanham Act, 15 U.S.C. § 1125(a) and New York State General Business Law, as well as a cause of action for defamation *per se*.

Following Catholic Health's motion to dismiss the initial complaint, BCBS timely filed an Amended Complaint as of right. Therein BCBS asserted five causes of action: (1) Catholic Health made literally false statements in advertisements regarding a BCBS Medicare Advantage Plan, Senior Blue HMO Select, in violation of § 1125(a)(1); (2) Catholic Health made misleading statements with respect to Senior Blue HMO Select, thereby influencing consumers' purchasing decisions, also in violation of this section of the Lanham Act; (3) Catholic Health's deceptive and misleading advertisements violated

1

New York General Business Law § 349; (4) Catholic Health's statements constituted false advertising in violation of New York General Business Law § 350; and (5) these false statements constituted *per se* defamation warranting actual and special damages as a result of customer confusion, loss of goodwill, loss of customers, and out-of-pocket expenses. (Docket No. 16.)

BCBS asserts that the following advertisements and statements constitute the false and/or misleading statements underlying its claims. First, advertisements appearing in church bulletins stated:

> [BCBS] has recently introduced a new Medicare Advantage product, Senior Blue HMO Select that replaces its existing Senior Blue HMP-POS 650 plan. This product specifically excludes all Catholic Health facilities including all hospitals, labs, diagnostic imaging, rehabilitation centers, home care, and all other sites-services. [BCBS] may not have adequately communicated this exclusion to its members. Please note that several other Medicare Advantage plans are available that include access to Catholic Health. For more information, visit CHSMedicareOptions.org or call (716) 923-9790.

(Am Compl ¶¶ 9-11 Ex A.)

Next, Catholic Health placed an ad in the Buffalo News on November 2, 2014, during BCBS's open enrollment period (Am Compl ¶¶ 5, 20), which stated in large type "[BCBS] Senior Blue HMO Select customers will no longer have access to Catholic Health facilities." (Am Compl Exs B, C.) The body of the ad, which is written in a smaller font, explains that BCBS's Senior Blue HMO Select "plan excludes all Catholic Health facilities including all hospitals, labs, diagnostic imaging, rehabilitation centers, home care and all other sites." (Id. (emphasis in original).) This text continues "While emergency services will still be covered, this new plan completely eliminates your ability to choose Catholic Health facilities for services like surgical procedures, home care,

rehabilitation, and other non-emergent care needs. Receiving such services at a Catholic Health facility will not be covered under this plan." (Id.) A bolded box on the side of the ad lists hospitals "not covered by [BCBS] Senior Blue HMO Select for non-emergent care in 2015." (Id.) BCBS alleges that, not only are the statements in this ad literally false, they mislead consumers into believing that BCBS does not provide coverage for other facilities not within the Catholic Health System network but, by virtue of their name ("Mount Saint Mary's Hospital" or "Brothers of Mercy"), may be perceived to be a "Catholic" health facility. (Am Compl ¶ 26.) Similar statements are found in in letters from Catholic Health CEO and President Joseph D. McDonald to current employees and Catholic Health System retirees, including: "This [Senior Blue HMO Select] is not a tiered product, meaning that other than emergency services, no coverage is provided for services at Catholic Health facilities." (Am Compl Exs D, E.)

BCBS further alleges that an op-ed article written by McDonald and published on November 5, 2015 (again during the October 15th through December 7th open enrollment period) also contained literally false statements "intended to confuse and deceive senior citizens" regarding coverage provided by Senior Blue HMO Select. (Am Compl ¶¶ 5, 40-42.) BCBS highlights the following language: "A new product being offered by [BCBS], called Senior Blue HMO Select, completely excludes all Catholic Health facilities. This means that, seniors who enroll in this plan would not receive benefits for non-emergency services provided at all Catholic Health sites . . ." (Am Compl ¶ 40 Ex F.) Finally, BCBS alleges that the similar statements on Catholic Health's website during the open enrollment period were also false and misleading. (Id. ¶¶ 44-45 Ex G.)

BCBS alleges that, contrary to Catholic Health's public statements, "all of [BCBS's] Medicare Advantage policies, including Senior Blue HMO Select, allow its customers to receive some level of treatment at Catholic Health facilities." (Am Compl ¶ 46; see id. ¶ 49 (noting that "the scope of the covered services varies").)

Catholic Health moved to dismiss the Amended Complaint on February 20, 2015, on the ground that it fails to state a claim for relief. (Docket No. 18.) This Court finds the motion fully briefed and oral argument unnecessary. For the reasons that follow, Catholic Health's motion is granted with respect to the fifth cause of action for defamation per se, and the motion for dismissal of the remaining four causes of action alleging false and misleading advertising under the Lanham Act and New York state law is converted to one for summary judgment.

## II. DISCUSSION

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12 (b)(6), this Court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal

conclusions. Iqbal, 556 U.S. at 678. In determining whether dismissal is warranted, a court is also entitled to consider, as relevant here:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . , and [4] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356-357 (S.D.N.Y. 2003)(footnotes omitted), *aff'd* 396 F.3d 161 (2d Cir. 2005), *cert denied,* 546 U.S. 935 (2005); see Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

### A.     Counts 1-4: False or Misleading Advertisements

BCBS's first two causes of action allege violations of section 43(a) of the Lanham Act, which provides a right to recovery against any person for the use of "a false or misleading representation of fact" that "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The third and fourth causes of action assert similar claims under New York State law provisions prohibiting false advertising and deceptive acts or practices aimed at consumers. See N.Y. General Business Law §§ 349, 350. Generally, and as relevant for the purposes of the present decision, the standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under §§ 349 and 350 of the New York General Business Law. Naked Cowboy v. CBS, 844 F. Supp. 2d 510, 518 (S.D.N.Y. 2012); Avon Products, Inc. v. S.C. Johnson & Son, Inc., 984 F. Supp. 768, 800 (S.D.N.Y. 1997).

To establish false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "the plaintiff must first demonstrate that the statement in the challenged advertisement is false. A false advertising claim may be based on one of two 'theories.'" Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014) (quoting Tiffany (NJ) v. eBay, Inc., 600 F.3d 93, 112 (2d Cir. 2010)). "Falsity may be established by proving that (1) the advertising is literally false as a factual matter," as BCBS alleges in the first cause of action, "or (2) although the advertisement is literally true, it is likely to deceive or confuse customers," as alleged in the second claim in the Amended Complaint. Merch Eprova AG, 760 F.3d at 255 (quoting S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001))(internal quotation marks omitted).

1. Commercial Advertising or Promotion

Catholic Health argues that the false advertisement claims must be dismissed because the purportedly false or misleading statements were not commercial in nature. (Catholic Health Mem of Law at 13-16.) In so arguing, Catholic Health relies on the four-part test set out in Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, which held that in order for representation to constitute commercial advertising or promotion with section 43(a) of the Lanham Act, the representations must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representation (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry."

859 F.Supp. 1521, 1535-36 (S.D.N.Y. 1994). Catholic Health argues that BCBS's

claims fail this test because Catholic Health and BCBS are not competitors; its statements were not made "for the purpose of influencing consumers to buy defendant's goods or services." Id. (cited in Catholic Health Mem of Law at 14).

Initially, in Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., the Second Circuit considered and adopted the first, third, and fourth elements of the Gordon & Breach test. 314 F.3d 48, 58 (2d Cir. 2002). The Court of Appeals noted that, to decide that appeal, "we need not decide whether the second element – that defendant and plaintiff be competitors [-- is also required]. We note that the requirement is not set forth in the text of Section 43(a) and express no view on its soundness." Id. Catholic Health argues that the Second Circuit therefore left the door open to the application of the "competitors" requirement; however, this Court agrees with BCBS that any such opening was firmly closed by the Supreme Court's decision in Lexmark Intern., Inc. v. Static Control Components, Inc. – U.S. –, 134 S. Ct. 1377, 1394, 1394, 188 L. Ed. 2d 392 (2014).

In Lexmark, the Supreme Court recognized that the "classic" Lanham Act false advertising claim is one in which one competitor directly injures another by making false statements about his or his competitor's products, thus inducing customers to switch. Lexmark Int'l, 134 S. Ct. at 1393. Nonetheless, the Court concluded that the parties in a false advertising claim need not be direct competitors. Id. at 1390, 1393-94. Instead, in order "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Id. at 1395; see Merck Eprova AG v. Gnosis S.p.A., 901 F. Supp. 2d 436, 449-50 (S.D.N.Y. 2012)

7

(Lanham Act requires a showing that defendant's deception is likely to influence purchasing decisions and that the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products), *aff'd* 760 F.3d 247 (2d Cir. 2014).

Catholic Health argues that Lexmark is distinguishable because there the parties were indirect competitors, and here the parties "operate in separate markets altogether." (Catholic Health Reply Mem at 4); see Lexmark, 134 S. Ct. at 1383-84 (Lanham Act plaintiff produced microchips which permitted defendant's competitors to refurbish and reuse defendant's toner cartridges). However, here BCBS asserts that Catholic Health's purportedly false or misleading statements about its Senior Blue HMO Select plan during the open enrollment period directly affected its sales and reputation, an injury cognizable under § 1125(a). Lexmark, 134 S. Ct. at 1393; see generally Educational Impact, Inc. v. Danielson Civil Action, No. 14-937(FLW)(LHG), 2015 WL 381332, *13 (D.N.J. Jan. 28, 2015) (recognizing that Lexmark repudiated the 'direct-competitor test' enunciated in Gordon & Breach); Tobinick v. Novella, No. 9:14-cv-80781, 2015 WL 1191267, *5 n. 10 (S.D. Fla. Mar. 16, 2015) (same).

Finally, "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." Fashion Boutique of Short Hills, 314 F.3d at 57. Here, the Amended Complaint sufficiently alleges that Catholic Health's advertisements and statements regarding Senior Blue HMO Select were made as part of a campaign

8

directed at influencing consumers' Medicare enrollment decisions.

      2.     <u>False or Misleading Nature of Catholic Health's Statements</u>

In the Amended Complaint, BCBS highlights Catholic Health's statements that Senior Blue HMO Select "specifically excludes all Catholic Health facilities" and that enrollees in that plan will no longer have access to or coverage at Catholic Health care facilities. (Am Compl ¶¶ 12, 20, 32, 37-39, 40, 44.) BCBS alleges that these statements are in fact false because Senior Blue HMO Select provides coverage for emergency care treatment, as well as treatment by primary care physicians, at all Catholic Health facilities. (Am Compl ¶¶ 13-16.) Catholic Health contends that BCBS's false and misleading advertising claims must be dismissed because BCBS has admitted that its Senior Blue HMO Select plan excludes all Catholic Health facilities. (Catholic Health Mem of Law at 8-13.)

In so arguing, Catholic Health first relies on an article published on WIVB.com in November 2014, which was attached to BCBS's original Complaint in support of allegations that Catholic Health's statements were in fact causing consumer confusion. (Compl ¶¶ 50-55 Ex H; Robinson Decl Ex 2.) This article quotes BCBS spokesperson Raphael Rodriquez as stating that Senior Blue HMO Select would cover medical care at all major medical facilities in Western New York with one exception: "Buffalo General, Roswell, ECMC, and Gates Vascular Institute, among others, but it does not include the Catholic Health System. So they are specifically excluded? On that option only. We have 6 other options that offer a full network." (Robinson Decl Ex 2.) This exhibit and the related allegation were omitted from BCBS's Amended Complaint.

Catholic Health also relies on "plan materials distributed by [BCBS] to

9

consumers, doctors, and medical facilities," including a BCBS STAT Bulletin. (Catholic Health Mem of Law at 9; Robinson Decl ¶¶ 8-10 Ex 4.) On this October 8, 2014 document, which indicates it was directed at "[a]ll providers and facilities," the bullet points under Senior Blue HMO Select state that this plan's "tailored facility network" includes "several leading hospitals . . ., but does not include facilities of the Catholic Health System." (Robinson Decl Ex 4.) "Members are not covered if they visit a facility outside the network;" however, "[e]mergency room visits anywhere are covered." (Id.) A BCBS "Benefits at a Glance" brochure, which Catholic Health asserts is a consumer brochure, similarly indicates that a Senior Blue HMO Select plan participant "must receive all routine care from plan providers. There is a tailored facility network with this plan. Please see the Provider Listing or Directory for participating facilities." (Robinson Decl ¶ 11 Ex 5.) Catholic Health asserts that none of its facilities are listed as a participating facility for this plan. (Robinson Decl ¶¶ 12-15 Exs 5-6.) Accordingly, Catholic Health argues that "[t]here is simply no dispute that the Plan, as self-described by BlueCross, does in fact exclude all Catholic Health facilities from its provider network." (Catholic Health Mem of Law at 9 (emphasis removed).)

BCBS responds that none of the documents relied on by Catholic Health may be considered on the present Rule 12(b)(6) motion. (BCBS Mem in Opp'n at 3-6.) As noted above, in resolving a motion to dismiss a complaint, a court may consider documents which, although neither attached nor incorporated by reference, are nonetheless 'integral' to the complaint and relied upon in it. In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d at 356-57. A court may also consider documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the

material and relied on it in framing the complaint. Id.; see Chambers v. Time Warner, Inc., 282 F.3d 147, 153-54 (2d Cir. 2002). BCBS argues that it did not rely on any of these documents in drafting the Amended Complaint, therefore they should be excluded from consideration.

If the exhibits at issue were in fact from the Senior Blue HMO Select policy itself, this Court would have little trouble finding that BCBS relied on the terms and effect of these documents in drafting the Amended Complaint. See Chambers, 282 F.3d at 153. However, these documents are separate promotional materials which discuss, but do not constitute, the underlying policy at issue. Accordingly, it cannot be concluded that BCBS relied on these documents in drafting the Amended Complaint, and the exhibits are not appropriately considered on a Rule 12(b)(6) motion to dismiss.

This does not, however, resolve this issue. District courts have two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir.1988); see Fed. R. Civ. P. 12(d) (where extrinsic evidence is "presented to and not excluded by the court," the court may convert the matter to a summary judgment motion after giving the parties "a reasonable opportunity to present all the material that is pertinent to the motion").

This Court finds that conversion is appropriate here. The extrinsic documents indicate that BCBS made statements to the press, to consumers, and to medical providers that are identical or substantially similar to the language used by Catholic

11

Health for which BCBS now seeks to recover under state and federal law. BCBS contends that Catholic Health's statements were false or misleading because Senior Blue HMO Select provides coverage for emergency care treatment, as well as treatment by primary care physicians, at all Catholic Health facilities. (Am Compl ¶¶ 13-16.) This information, however, is also not included in the BCBS statements and promotional materials submitted by Catholic Health. Further, BCBS does not deny that the statements attributed to it were made, but asserts only that "neither the WIVB Article nor the STAT Bulletin were directed to consumers as authoritative statements by BCBSWNY as to where a consumer could seek treatment." (BCBS Mem in Opp'n at 11.) Nonetheless, even if the short statements in the BCBS publicity materials are found to inaccurately reflect the true scope of Senior Blue HMO Select, it is unclear how BCBS can press a viable claim for false or misleading advertising against Catholic Health for using the same language BCBS used in its own materials. Instead, pursuing false advertising or deceptive act claims based on statements repeated from BCBS's own promotional materials, particularly materials directed at medical providers such as Catholic Health (Robinson Decl Ex 4), is arguably frivolous. Accordingly, the parties will be given an opportunity to supplement their submissions in light of this Court's decision to convert the present motion to dismiss the first four causes of action to one for summary judgment on those claims.

**B.    Defamation**

BCBS's fifth cause of action alleges that it is entitled to damages because the statements contained in Catholic Health's advertisements were false and constituted *per se* defamation. (Am Compl ¶¶ 92-95.) Further, that as a result, BCBS "sustained

actual and special damages as a result of Defendant's false statements, including, but not limited to, customer confusion, loss of goodwill, loss of customers, and out-of-pocket expenses incurred in attempting to mitigate against the damages caused by Defendant's false statements." (Am Compl ¶ 95.)

"Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault ... and it must either cause special harm or constitute defamation *per se.*' " Peters v. Baldwin Union Free Sch. Dist., 320 F.3d 164, 169 (2d Cir. 2003) (quoting Dillon v. City of N.Y., 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (N.Y.A.D. 1st Dep't 1999)). "[W]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 180 (2d Cir. 2000) (quoting Ruder & Finn Inc. v. Seaboard Surety Co., 52 N.Y.2d 663, 422 N.E.2d 518, 522 (1981)). However, where the challenged statement "tend[s] to disparage or reflect negatively on the quality, condition or value of a product or property," the claim is one for product disparagement rather than defamation *per se*. Kirby v. Wildenstein, 784 F. Supp. 1112, 1115-16 (S.D.N.Y. 1992) (citing Drug Research Corp. v. Curtis Pub. Co., 7 N.Y.2d 435, 440 (1960)); see Ruder & Finn Inc., 52 N.Y.2d at 670-71 (commercial defamation and disparagement claims, although similar, are nonetheless distinct).

" 'Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance.' " Celle, 209 F.3d at 177 (quoting Aronson v. Wiersma, 65 N.Y.2d 592, 483 N.E.2d 1138, 1139 (1985)). Here, the Court agrees with Catholic Health that, considering the Amended Complaint as a whole, BCBS's

13

claim sounds in product disparagement rather than defamation *per se*. BCBS's allegations are that Catholic Health has misrepresented the scope of coverage under Senior Blue HMO Select by stating that this plan provides no coverage at Catholic Health facilities, to the erroneous exclusion of emergency services and primary care physician treatment. Similarly, although BCBS alleges that consumers may perceive references to "Catholic Health" facilities as including hospitals such Brothers of Mercy, which is not a member of Defendant's network (Am Compl ¶ 26), this allegation also relates only to the scope of coverage under one of BCBS's plans, Senior Blue HMO Select. Therefore the disputed statements, as discussed in the Amended Complaint and considered in the context in which they appeared, cannot be now said (as BCBS attempts for the first time in its opposition) to state a claim that Catholic Health's media campaign was an attempt to paint BCBS as "anti-Catholic." (BCBS Mem in Opp'n at 18-19.)

Finally, because the fifth cause of action sounds only in product disparagement, BCBS is required to plead and prove, among other things, special damages. Ruder & Finn Inc., 52 N.Y.2d at 670-71; Drug Research Corp., 7 N.Y.2d at 440-41. To satisfy the special damages pleading requirement, "a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice." Nunez v. A-T Financial Information Inc., 957 F. Supp. 438, 441 (S.D.N.Y. 1997) (citing Boyle v. Stiefel Labs., Inc., 204 A.D.2d 872, 612 N.Y.S.2d 469, 471 (3d Dep't), *lv denied*, 84 N.Y.2d 803 (1994)). Here, despite the fact that Catholic Health raised this argument in its motion to dismiss the original complaint (Catholic Health Mem of Law at 15-18, Docket No. at 12-1), no attempt to meet this

14

requirement was made in the Amended Complaint. This cause of action is therefore dismissed with prejudice.

### III. CONCLUSION

The Court finds that the exhibits submitted by Catholic Health were not relied on by BCBS in drafting the Amended Complaint, and as such are not appropriately considered on a motion to dismiss. Nonetheless, these exhibits appear integral to the resolution of this matter. Accordingly, Catholic Health's motion to dismiss the first four causes of action is converted pursuant to Rule 12(d) to one for summary judgment. The motion is granted with respect to the fifth cause of action, and BCBS's defamation *per se* claim is dismissed with prejudice.

### IV. ORDERS

IT HEREBY IS ORDERED that Defendant's motion to dismiss the Amended Complaint (Docket No. 18) is GRANTED in part and CONVERTED in part to a motion for summary judgment as stated above;

FURTHER, that Plaintiff has until October 23, 2015 to supplement it opposition to Defendant's motion in light of the conversion to summary judgment;

FURTHER, that Defendant has until November 6, 2015 to supplement its reply.

SO ORDERED.

Dated: September 24, 2015
Buffalo, New York

      /s/William M. Skretny
      WILLIAM M. SKRETNY
      United States District Judge